## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | x | |
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | Civil Action No. 09-1538 (TJS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ELITE TECHNOLOGY (NY), INC. | : | |
| | : | |
| and | : | |
| | : | |
| PTA OF PUBLIC SCHOOL 41, MANHATTAN, NY | : | |
| | : | |
| Defendants. | x | |

---

### BRIEF IN SUPPORT OF DEFENDANT PTA OF PUBLIC SCHOOL 41'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

---

On the Brief:

    Yuri J. Brunetti, Esq.

                  Landman Corsi Ballaine & Ford P.C.
                  One Penn Center
                  1617 JFK Boulevard, Suite 955
                  Philadelphia, PA 19103
                  (215) 561-8540

467801.1 DOCSNJ

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

       A.      Procedural History..................................................................................2

       B.      Statement of Facts.................................................................................3

ARGUMENT.........................................................................................................................8

A DISTRICT COURT HAS THE POWER TO TRANSFER A CIVIL ACTION TO
ANOTHER APPROPRIATE DISTRICT THAT IS MORE CONVENIENT FOR
THE PARTIES AND WITNESSES AND WHERE JUSTICE WILL BEST BE
SERVED ...............................................................................................................8

       A.      The Private Interest Factors Favor Granting the PTA's
                Motion to Transfer Venue ....................................................................10

            1.      Plaintiff's Forum Preference Is Not
                      Controlling.......................................................................10

            2.      The Forum Selection Clause in the Savin 4090 Lease and the
                      Savin 4051/4075 Lease Does Not Require That the Case
                      Remain in this Court ...................................................12

            3.      Convenience Factors Favor Transfer to the Southern
                      District of New York....................................................15

       B.      The Public Interest Factors Favor Granting the PTA's Motion to
                Transfer Venue .......................................................................17

            1.      Practical Considerations Favor Transfer to New York ...........18

            2.      New York has a Stronger Local Interest in this Litigation......18

            3.      New York Public Policy Favors Litigation of this Case in New
                      York........................................................................19

CONCLUSION .....................................................................................................20

## PRELIMINARY STATEMENT

Defendant PTA of Public School 41 ("PTA") respectfully submits this brief in support of its motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Southern District of New York. Upon weighing the applicable factors, this Court should transfer this case.

This case should be transferred to the Southern District of New York because: (1) Public School 41 and the PTA and its members are all located in the Southern District of New York; (2) co-defendant Elite Technology, Inc. ("Elite") is located in New York; (3) the alleged cause of action and the PTA's cross-claims arose in New York; (4) the copy machines at issue, records and other evidence regarding plaintiff's claims and the PTA's cross-claims are located in New York; (5) New York is the most convenient forum for Elite, the PTA, and the large majority of the fact witnesses; (6) New York law governs one of the leases at issue, the PTA's cross-claims against Elite and a buyout agreement between the PTA and Elite; (7) the PTA and Elite are already involved in pending, related litigation in New York arising from the same improper conduct by Elite alleged in this case, and both have counsel in New York for that case; and (8) New York State public policy favors litigation of this case in New York because the PTA, which is a local school board entity, is located there.

For these reasons, the Southern District of New York has the greatest interest in this case, and the interests of justice require transferring the case to New York.

## **BACKGROUND**

On April 9, 2009, plaintiff De Lage Landen Financial Services ("DLL") filed a Complaint against Elite and the PTA.  (See plaintiff's Complaint at Document No. 1 on the Court's Docket). On June 10, 2009, the PTA filed an Amended Answer with cross-claims against Elite.  (See PTA's Amended Answer with Cross-claims at Document No. 9 on the Court's Docket).

An initial scheduling conference was held on June 30, 2009, at which time all parties agreed to attend a settlement conference in an effort to obtain an early resolution of this case.  The Court ordered discovery to be completed by October 23, 2009, and trial on March 25, 2010.  The Court also referred the parties to Magistrate Judge Felipe Restrepo for a settlement conference, which was held on July 16, 2009.  The parties were unable to reach a settlement.

Having been unable to reach an early resolution in this case, the PTA now requests the Court to enter an Order transferring this case to the Southern District of New York.

### A.    The Parties

Plaintiff DLL, a Michigan Corporation, brings this action against the PTA and Elite in relation to three leases for copy machines and a contract between DLL and Elite.  (See plaintiff's Complaint).  DLL claims breach of contract and unjust enrichment against the defendants.  (See plaintiff's Complaint).  The PTA has asserted cross-claims against Elite for negligent hiring, negligent supervision and retention, and violations of New York General Business Law § 349.  (See PTA's Amended Answer).

DLL is a "global provider of leasing, business and consumer finance solutions" with "some 45 nationalities [] represented within."  (See information from DLL's website attached hereto at Exh. A).  According to its website, DLL has offices in the Netherlands and Pennsylvania.

Elite is a New York corporation with its principal place of business in New York City.  (See

DLL's Complaint and Elite's Answer at ¶ 2 (Documents 1 and 8) on the Court's Docket; see also information from Elite's website attached hereto at Exh. B).

The PTA is a non-profit association of parents, teachers and staff, which supports Public School 41 in New York City. The PTA's existence is mandated by New York law, it is regulated by New York law, and the children who attend this public school are New York residents. N.Y. Educ. Law § 2590-d(2)(a) (McKinney's 2003); N.Y.C. Dep't. of Ed. Chancellor Regulation A-660. The purpose and mission of the PTA is to provide support and resources to the school for the benefit and educational growth of the children attending Public School 41. It funds supplemental enrichment programs for the students and provides administrative support to the school, including providing funding for the school's copy machines. The PTA's operations are funded solely through donations and fundraising, and its Board members are unpaid volunteers. (See Brachman Declaration, ¶¶ 1, 4, 5, 7; Ferrari Declaration ¶ 3; Yaccarino Declaration ¶ 5; Garelick Declaration, ¶ 4).[1]

**B.     Statement of Facts**

In 2003, Jill Tapia, who was co-President of PTA at that time, leased three copiers from Ricoh Business Services ("Ricoh Lease"). The PTA used a broker, Dawn Cangro ("Cangro"), to lease its copy machines. Cangro worked for Ricoh Business Services when she first started brokering copy machine leases for the PTA, and subsequently leased copiers to the PTA while working for Elite. (See Yaccarino Declaration, ¶¶ 9, 10; Garelick Declaration, ¶ 5).

In approximately 2005, Cangro and Elite told the PTA Board that it could get better copy machines and a better deal, if the PTA updated its machines using Elite. Cangro also proposed that Elite buyout the Ricoh Lease in order to enable the PTA to lease new copiers through Elite. After some discussion, Elite and the PTA agreed to a buyout agreement ("Buyout Agreement") whereby

---

[1]   The PTA has filed Declarations from Mindy Garelick, Susan Yaccarino, Jacqueline

the PTA would be paid by Elite for the remaining payments due on the Ricoh Lease in exchange for leasing new copiers. Elite agreed to pay the remaining balance due on the Ricoh Lease via annual lump sum payments in 2005, 2006 and 2007. (See Yaccarino Declaration, ¶ 11; Garelick Declaration, ¶ 6). All discussions and negotiations regarding the Buyout Agreement took place in New York City. (See Garelick Declaration, ¶ 6).

In 2005, in conjunction with the Buyout Agreement, the PTA leased a Savin 4090 copier ("Savin 4090 Lease"). This lease was brokered by Elite, and Elite made its first payment to the PTA pursuant to the Buyout Agreement. All discussions and negotiations regarding this lease took place in New York City. (See Garelick Declaration, ¶ 7; Yaccarino Declaration, ¶ 12).

In 2006, in conjunction with the Buyout Agreement, the PTA leased a Savin 4051 and a Savin 4075 copier ("Savin 4051/4075 Lease"). This lease was brokered by Elite. All discussions and negotiations regarding this lease took place in New York City. (See Garelick Declaration, ¶ 8). The lease was brokered by Elite's employee Ms. Cangro, and Elite made its second payment to the PTA pursuant to the Buyout Agreement. (See Yaccarino Declaration, ¶ 13).

In 2007, the PTA discovered that it was paying invoices from two separate companies, Key Equipment and DLL, for a Savin 4051 copier. The invoices from both companies had the same exact serial number for the Savin 4051 copier. (See Yaccarino Declaration, ¶ 16). As a consequence, the PTA paid both Key Equipment and DLL for the same copy machine, resulting in an overpayment of over $11,000. The PTA only possessed one Savin 4051 copier. It is believed that Cangro submitted a second lease for a Savin 4051 to Key Equipment.

Upon realizing that it was paying both DLL and Key Equipment for the same copier, the PTA and its *pro bono* counsel began investigating the payments it was making for its copiers. Throughout

Brachman and Lisa Ferrari, Esq. in support of its motion to transfer venue.

the investigation, the PTA Board members and its *pro bono* counsel contacted prior and current Board members, as well as employees of Elite in New York, and conducted meetings and exchanged extensive correspondence in New York City in an effort to resolve the issues relating to the copier leases. (See Yaccarino Declaration, ¶16; Ferrari Declaration, ¶ 10).

The PTA's investigation revealed that Cangro was previously charged and convicted in New York County of grand larceny and falsifying business records relating to copy machine leases she brokered while working for Ricoh, who employed her before she was hired by Elite. Cangro and Elite currently are the subject of a criminal investigation by the New York County District Attorney's office. Records regarding Cangro's prior conviction and the current criminal investigation are also located in New York. These documents are relevant to the PTA's cross-claims against Elite. (See Ferrari Declaration, ¶¶ 11, 12).

In an effort to explain the invoices from Key Equipment, Elite produced two versions of a document entitled "Addendum of Collateral" which purported to substitute a Canon 3300 copier from Key Equipment for the Savin 4051 copier. The PTA has never been in possession of a Canon 3300 copier, and both versions of the Addendum of Collateral are believed to be forgeries. (See Garelick Declaration, ¶ 9). The original documents are in the possession of Elite in New York. (See Ferrari Declaration, ¶ 13).

In 2007, Elite refused to make the final payment due under the buyout agreement. (See Yaccarino Declaration, ¶ 14). Instead, Cangro and Elite advised the PTA that it had to sign a new service agreement with Elite that would have significantly increased the PTA's financial obligations with respect to the copy machines it was leasing. (See Yaccarino Declaration, ¶ 15).

In 2008, prior to the filing of DLL's Complaint, Key Equipment filed a Complaint in New York State against the PTA, Elite and other parties. (See Key Equipment's Complaint attached

hereto at Exh. C).   Both cases arise in part from the fraudulent activities of Elite, in relation to the PTA's lease of a Savin 4051 copier, and the PTA has asserted nearly identical cross-claims against Elite in the New York State case.   (See PTA's Answer attached hereto at Exh. D).   The Court in the New York State case recently granted the PTA's motion to transfer venue from Albany County to New York County.   (See Order attached hereto at Exh. E).   The case is currently in the process of being transferred from Albany to Manhattan as a result of the Court's ruling.   The PTA has retained counsel in both New York and Pennsylvania to represent its interests in the two cases.   (See Ferrari Declaration, ¶¶ 4-7).   Elite has also retained counsel in New York for the case filed by Key Equipment and demanded that venue be changed from Albany to New York City.   (See Elite's Demand for Change of Venue attached hereto at Exh. F).

The Ricoh and Savin copiers at issue are located in New York.   Elite is in possession of the Ricoh machines, and the Savin copiers are currently located at Public School 41.   (See Brachman Declaration, ¶ 13; Ferrari Declaration, ¶ 14).   As noted above, relevant documentation is also located in New York.   (See Brachman Declaration, ¶ 13; Ferrari Declaration, ¶¶ 9, 10).

The PTA's potential witnesses in this matter include the following current and former members: Jill Tapia, a past co-President (2003-2004), Vicki Sando, a past co-President (2007-2008), Kellie Anderson-Picallo, a past co-President (2007-2008), Mindy Garelick, a past co-President (2006-2007), Nancy Caccappolo, a past Treasurer (2006-2007), Susan Yaccarino, a past Treasurer (2007-2008), Laura Williams, a past and current co-President (2008-2010), and Jacqueline Brachman, a past and current co-president (2008-2010).   (See Brachman Declaration, ¶ 9; Yaccarino Declaration, ¶ 7).   All of these witnesses reside in New York City.   (See Brachman Declaration, ¶ 10; Yaccarino Declaration, ¶ 8).   All of the PTA's members are unpaid volunteers.   (See Brachman Declaration, ¶ 7; Garelick Declaration, ¶ 4,).

It would place a financial burden on the PTA to pay for travel and lodging costs incurred for PTA witnesses and representatives to attend court appearances and trial in Philadelphia. Any expenses incurred in this litigation for travel and/or lodging would diminish the amount of money available for the PTA's programs and deprive the children of Public School 41 of the full benefit of the PTA's fundraising efforts. (See Brachman Declaration, ¶ 12; Yaccarino Declaration, ¶ 21). For example, the PTA incurred travel expenses of $143.25 to have one representative attend the July 16, 2009 settlement conference, and that representative was required to miss a full day of work, had to travel approximately four (4) hours round trip, and had to be away from her family for over 12 hours. (See Ferrari Declaration, ¶¶ 16-19).

Traveling to Philadelphia for this case would cause significant personal and financial burdens to the PTA's witnesses, all of whom are unpaid volunteers with child care and family obligations. They would be required to hire someone to look after their children, including preparing meals and taking children to and from school and after-school activities. These witnesses would also incur out-of-pocket expenses for each trip to Philadelphia, such as meals. In the event of an emergency, such as an illness or accident, these witnesses would have to rely upon public transportation and it would be much more difficult to quickly get home to their families. The PTA members all have children at Public School 41, and all would face the same difficulties and hardship to their families and professional lives if they were required to appear in Philadelphia for trial. (See Brachman Declaration, ¶ 11; Yaccarino Declaration, ¶¶ 18-20; Garelick Declaration, ¶¶ 11-13; Ferrari Declaration, ¶¶ 20-24, 27).

Transfer of this case to the Southern District of New York would greatly reduce the travel expenses and time commitments of the PTA's representatives and witnesses, all of whom volunteer their time. (See Ferrari Declaration, ¶ 24).

## ARGUMENT

### A DISTRICT COURT HAS THE POWER TO TRANSFER A CIVIL ACTION TO ANOTHER APPROPRIATE DISTRICT THAT IS MORE CONVENIENT FOR THE PARTIES AND WITNESSES AND WHERE JUSTICE WILL BEST BE SERVED

Prior to 1948, district courts had no discretion to transfer civil actions to other districts, but were limited under the doctrine of forum non conveniens to the dismissal of actions without prejudice when considerations of convenience and public interest so dictated. By enactment of Section 1391(a) of the Judiciary Act of 1948, Congress eliminated the need to dismiss cases by providing the following:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. 1404(a). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). By vesting the district courts with the discretion to transfer civil actions to other districts, Congress intended that actions be transferred upon a lesser showing of inconvenience. See Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

In Norwood v. Kirkpatrick, 349 U.S. 29 (1955), the Supreme Court discussed the relationship between Section 1404(a) and the doctrine of forum non conveniens. The Court stated that Congress intended to do more than merely codify existing common law:

> [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Id. at 32. Under Section 1404, therefore, the moving party need only show "that the statutory considerations are satisfied by a preponderance of facts." Galfand v. Chestnutt, 363 F. Supp. 296,

467801.1 DOCSNJ

8

298 (E.D. Pa. 1973).

A court's discretion to transfer extends to other districts where the action might originally have been brought. Van Dusen, 376 U.S. at 624. In this case, plaintiff does business in New York and the leases at issue were signed in New York. In addition, the PTA and Elite are located in New York. Thus, this action originally could have been brought there under 28 U.S.C. § 1391(b),(c).

"The district court has broad discretion in deciding a motion to transfer venue because the analysis involved is 'flexible and individualized.'" Grohoski v. Wyndham International, Inc., 2005 WL 475175, *2 (E.D. Pa. 2005) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). In deciding motions for transfer, district courts must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Fed. Prac. & Proc. Juris. 3d § 3847).

The relevant factors generally divide into two categories: private interest factors and public interest factors. Id. The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the availability of witnesses to testify at trial; and (6) the location of records and other evidence. Id. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases. Id.

In this action, the private and public interest factors favor transferring this action to the Southern District of New York.

467801.1 DOCSNJ                                      9

**A.      The Private Interest Factors Favor Granting the PTA's Motion To Transfer Venue**

First, DLL's forum preference should be given limited deference because the essential facts regarding DLL's claims and the PTA's defenses and cross-claims occurred in the Southern District of New York. Second, convenience factors favor granting the PTA's motion, as both defendants and numerous witnesses reside in New York, and relevant records, copiers and evidence are located in New York.

**1.      Plaintiff's Forum Preference Is Not Controlling**

In deciding transfer motions, courts no longer give overriding consideration to a plaintiff's choice of forum. Norwood, 349 U.S. at 32. While the plaintiff's choice of forum is usually given "paramount consideration," countervailing considerations can mitigate this preference. See Grohoski, 2005 WL 475175 at *2. In Grohoski, this Court granted the defendants' motion to transfer venue from Pennsylvania to Florida, even though the plaintiffs and several witnesses were located in Pennsylvania. Id. The Court noted that trial in Florida would be "easier, more expeditious, and less expensive" than in Pennsylvania because essential evidence, including witnesses, equipment, the site of the accident and medical records, were located in Florida. Id.

"To insist that plaintiff's choice of forum is controlling would be to render 28 U.S.C. § 1404(a) meaningless." Lomano v. Black, 285 F. Supp. 2d 637, 644 (E.D. Pa. 2003) (quoting Rowles v. Hammermill Paper Co., Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988)). Plaintiff's choice of forum is entitled to less weight when all of the operative facts in the litigation occurred in another district and have no material connection to the chosen district. Eagle Traffic Control v. James Julian, Inc., 933 F. Supp. 1251, 1259 (E.D. Pa. 1996); Nat. Mortg. Network, Inc. v. Home Equity Ctrs., Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988); Schmidt v. Leader Dogs for the Blind, Inc., 544 F. Supp. 42, 47 (E.D. Pa. 1982); Fitzgerald v. Cent. Gulf Steamship Corp., 292 F. Supp. 847, 849 (E.D. Pa. 1968);

Exelon Generation Co., LLC v. Hoosier Energy Rural Elec. Coop., Inc., 2005 WL 2365306, at *2 (E.D. Pa. 2005); Bolick Distribs. Corp. v. Armstrong Holdings, Inc., 2003 WL 21500558, at *22-23 (E.D. Pa. 2005).

Further, where most of the operative facts arise in the venue preferred by a defendant, the defendant's preference is entitled to more deference than plaintiff's choice of forum. See, e.g., Headon v. Colorado Boys Ranch, 2005 WL 1126962, at *4 (E.D. Pa. 2005); Lomano, 285 F. Supp. 2d at 644-45 (giving deference to the defendant's choice of forum when it coincided with the location of all the operative facts in the case).

In this case, the operative facts giving rise to DLL's claims, the PTA's defenses, and the PTA's cross-claims occurred in the Southern District of New York. All three copier leases at issue were negotiated in New York and were signed by the PTA in New York. The Buyout Agreement between the PTA and Elite was negotiated and entered into in New York. The PTA's investigation of the copier leases took place in New York, and extensive communications and meetings with Elite regarding the problems identified with the copier leases took place in New York.

The PTA anticipates that DLL will claim that the Savin 4090 Lease and the Savin 4051/4075 Lease were executed by DLL in the Eastern District of Pennsylvania and that the PTA made payments on the leases in Pennsylvania. However, such connections are technical in nature and should not trump the numerous other operative facts that occurred in New York.

Moreover, DLL is not the only aggrieved party in this case. The PTA has filed separate and independent cross-claims against Elite under New York General Business Law § 349 and for negligent hiring and negligent supervision and retention, all of which arise under New York law. Thus, the PTA is also a complainant in this matter, and its forum preference should be given the same consideration as DLL's preference.

Accordingly, the Eastern District of Pennsylvania has no material connection to the operative facts underlying the claims in this case, and plaintiff's choice of forum is not controlling.

**2.      The Forum Selection Clause in the Savin 4090 Lease and the Savin 4051/4075 Lease Does Not Require That the Case Remain in this Court**

The PTA is aware that DLL has litigated numerous cases in the Eastern District of Pennsylvania and has successfully opposed motions to transfer venue in other cases. However, as discussed herein, each case requires an individualized evaluation by the Court in order to determine whether transfer is appropriate, and this case has unique circumstances not present in DLL's other cases.

The PTA anticipates that DLL will argue that the forum selection clause contained within the two Savin leases require that this case remain in this Court. (See Savin 4090 Lease and Savin 4051/4075 Lease attached as Exhs. 9 and 2, respectively, to plaintiff's Complaint).[2] While the Third Circuit Court of Appeals has stated that "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum," it has also stated that such a clause "should not receive dispositive weight." Jumara, 55 F.3d at 880. Determining whether a case should be transferred "involves a multi-factored test incorporating the forum selection clause as one facet of the convenience-of-the-parties consideration." Id.

Initially, it should be noted that the forum selection clause in the Savin 4090 Lease and the Savin 4051/4075 Lease does not mandate that any case arising out of the leases be tried in the Eastern District of Pennsylvania. Instead, the clause states that the lessee consents to personal jurisdiction and subject matter jurisdiction in this Court. The PTA did not consent to exclusive jurisdiction in this Court.

---

[2] Because the PTA believes that certain documents relative to this case have been modified and/or are forgeries, the PTA does not concede that the copies of the leases attached to

Moreover, unlike the situation in <u>Jumara</u> where the forum selection clause related to all claims in that case, the forum selection clause in this case relates to only some of the claims at issue. For example, the Ricoh Lease does not contain a forum selection clause, and this lease was negotiated and executed by the PTA in New York for copiers that were used in New York. Accordingly, the Ricoh Lease is governed by New York law and the claims arising from same should be tried in New York.

In addition, the Buyout Agreement between Elite and the PTA was negotiated and entered into in New York and is not subject to any forum selection clause. Accordingly, the Buyout Agreement should be interpreted in accordance with New York law and the claims arising from same should be tried in New York.

Furthermore, the PTA has filed five (5) cross-claims against Elite in this case that are separate and independent from DLL's claims. All of these cross-claims arise under New York law, none of these claims is subject to any forum selection clause, and these claims should be tried in New York.

In addition to the lack of a forum selection clause with respect to the majority of the claims in this case, the "convenience-of-the-parties" factors, <u>Jumara</u>, 55 F.3d at 880, weigh heavily in favor of transferring this case to New York. As discussed in the Statement of Facts, *supra*, this case has extensive connections to New York that make litigation and trial in New York more convenient:

- Public School 41, the PTA and all of its material witnesses are located in New York City;

- Elite and its employees are located in New York City;

- the Savin copy machines at issue are located at Public School 41 in New York City;

- the Ricoh copy machines at issue are in Elite's possession in New York;

---

DLL's Complaint are true and accurate copies of the leases signed by the PTA's representatives.

467801.1 DOCSNJ                    13

- former Elite employee Dawn Cangro is located in New York City;

- records relating to Cangro's criminal charges and conviction in 2006 relating to her Ricoh employment and the ongoing criminal investigation of Cangro and Elite are located in New York City;

- the Ricoh Lease was negotiated in New York City, signed by the PTA in New York City and is governed by New York law;

- the Buyout Agreement was negotiated and entered into by the PTA and Elite in New York City and is governed by New York law;

- the Savin 4090 Lease was negotiated and entered into by the PTA in New York City;

- the Savin 4051/4075 Lease was negotiated and entered into by the PTA in New York City;

- the PTA's cross-claims against Elite for violations of New York General Business Law § 349, negligent hiring, and negligent supervision and retention arise under and are governed by New York law;

- the PTA's documents in support of its defenses and cross-claims are located in New York City;

- the original Addendum of Collateral forms are in Elite's possession in New York City;

- the PTA's investigation of Elite's conduct, including meetings between Elite and the PTA and extensive correspondence, occurred in New York City; and

- Elite and the PTA are involved in another, related case pending in New York City, and each has retained separate counsel in that case.

Thus, a minority of the claims in this litigation is subject to the forum selection clause in the two Savin leases, and the case has extensive connections to New York. Accordingly, the forum selection clause should not have any controlling effect and this case should be transferred to the Southern District of New York.

467801.1 DOCSNJ                              14

**3.    Convenience Factors Favor Transfer to the Southern District of New York**

The purpose of allowing § 1404(a) transfers is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998). The convenience of the parties, witnesses, and the interests of justice are among the key considerations in determining whether to grant these motions. Id. (citing Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). Specific factors a court should assess for determining these considerations include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of, willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Here, the convenience of the parties and witnesses involved favors transfer to the Southern District of New York. As discussed above, plaintiff does business in New York, the events giving rise to plaintiff's claims occurred in the Southern District of New York, the probable fact witnesses reside and/or work in or near the Southern District of New York, the copiers and the documents at issue are located in New York, and both defendants are located in New York. Transferring the case to New York will make the case easier, more expeditious, and less expensive for all parties and witnesses involved. Therefore, the convenience of the parties and witnesses is best served in the Southern District of New York, not the Eastern District of Pennsylvania.

The factors at play in this case are very similar to those analyzed by District Judge Reed in Davis v. Reliance Standard Insurance Company, 1998 WL 651143 (E.D. Pa. 1998). In Davis, Judge Reed granted defendants' motion to transfer venue to the Northern District of Illinois. Id. at *4. In

granting the motion, Judge Reed accepted the facts and arguments presented by defendants, including the following: (1) all defendants resided or did business in Illinois and venue in Illinois was proper; (2) the lawsuit could have been brought in Illinois; (3) litigation in Pennsylvania would cause expense and hardship to one of the moving defendants, who was a single parent; (4) that same moving defendant was involved in related litigation pending in Illinois; (5) the moving defendants intended to rely upon witnesses in Illinois in support of their cross-claims and counter-claims; and (6) access to proof was easier in Illinois, as a significant portion of the evidence was located there. Id. at *3-4; see also Dominy v. CSX Transp., Inc., 2006 WL 573801, *3-5 (E.D. Pa. 2006) (holding that the "convenience of parties, witnesses, and the location of sources of proof weigh[ed] heavily in favor of transfer," even though two of the plaintiff's fact witnesses were located in Philadelphia, because "the possible inconvenience to those witnesses [was] outweighed by the major inconvenience to all other witnesses in this case").

Just as in Davis, both defendants are located in New York and the case could have originally been filed in New York. In addition, as in Davis, litigation of this case in Pennsylvania will cause hardship and expense to the PTA's members, all of whom are volunteers, due to their work and family obligations, and will also cause hardship and expense to the PTA itself, as it is a non-profit organization funded exclusively by donations and fund-raising. It cost the PTA nearly $150 in travel expenses to send one representative to a settlement conference in Philadelphia for this case. Attending trial in Philadelphia will subject the PTA to significant lodging and transportation costs. Any expenses incurred by the PTA arising from travel and lodging for trial in Philadelphia will directly diminish the amount of money available to benefit the students and to operate PTA's programs.

Moreover, like Davis, the PTA and Elite are both involved in pending litigation in New York

arising from the same improper conduct of Elite at issue in this case and already have counsel in New York. It is a waste of the parties' resources to have counsel and litigate these cases in both New York and Philadelphia.

Furthermore, the PTA will rely upon testimony from former Elite employees located in New York in support of its defenses and cross-claims, and relevant documents and the copiers at issue are located in New York. Thus, consistent with Judge Reed's decision in <u>Davis</u>, transfer of this case is appropriate.

Transfer of this case to New York will not cause significant inconvenience or financial burden to DLL. As discussed above, the essential facts in this case supporting PTA's defenses and cross-claims will be established via the testimony of PTA members as well as current and former employees of Elite in New York. DLL's claims will require very little testimony or evidence from DLL. Accordingly, producing a few witnesses and some documents at trial in New York will not be so burdensome so as to require that the case remain in Pennsylvania. <u>See</u> <u>White v. Smithkline Beecham Corp.</u>, 2007 WL 1237952, *5 (E.D. Pa. 2007) (noting that the moving defendant's financial status allowed it to absorb the cost of traveling to a farther destination more easily than the plaintiffs and that the defendant's employees will need to travel regardless of the trial location because the defendant's employees were located throughout the world). DLL is a multi-billion dollar corporation operating throughout the United States and abroad. Its financial situation enables it to easily travel to New York and its employees will most certainly be paid for their time. The balance of the financial hardships favors transferring this case to New York.

**B.      The Public Interest Factors Favor Granting the PTA's Motion to Transfer Venue**

In addition to private interest factors, district courts should consider the following public interest factors when deciding motions to transfer venue: (1) the enforceability of the judgment; (2)

practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative court congestion in the competing courts; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. Jumara, 55 F.3d at 879-880. Here, practical considerations and the local interest in deciding the controversy favor venue of this case in the Southern District of New York over the Eastern District of Pennsylvania.[3]

### 1. Practical Considerations Favor Transfer to New York

Practical considerations favor transferring this case to the Southern District of New York because most of the parties, witnesses and evidence are located in New York. As discussed previously, plaintiff does business in New York, the incidents giving rise to plaintiff's lawsuit and the PTA's cross-claims occurred in New York, both defendants are located in New York, nearly all of the potential fact witnesses live and/or work in or near New York, and the copiers and relevant records are located in New York. It is impractical to try this matter in a forum that is farther away from the evidence and witnesses involved when a closer alternative forum is available that will minimize travel time and expenses.

### 2. New York has a Stronger Local Interest in this Litigation

The local interest in resolving plaintiff's case clearly rests in the Southern District of New York for similar reasons. The New York community is where the events giving rise to plaintiff's claims and the PTA's cross-claims occurred, where most of the fact witnesses live and/or work, and where both defendants are located. The Pennsylvania community's only tie to this litigation is that

---

[3] The enforceability of any judgment (factor 1) does not favor venue in the Eastern District of Pennsylvania over the Southern District of New York, or vice versa, and warrants no further discussion. In addition, the PTA is not aware of any court congestion issues (factor 5) that would impact the Court's analysis of this motion.

DLL has offices located in Wayne, Pennsylvania. Accordingly, it is in the interests of justice to have the disputes in this case handled and resolved by a New York court and New York jurors.

In addition, as discussed above, New York law governs the Ricoh Lease, the Buyout Agreement, and the PTA's five (5) separate and independent cross-claims against Elite. District Court Judges in the Southern District of New York most certainly have had greater opportunity to apply New York law and are more likely to be familiar with New York law.

Therefore, the Southern District of New York has the greater interest in resolving this matter. See Dominy, 2006 WL 573801 at *4 (finding that New York citizens had a far greater interest in the outcome of the litigation because the plaintiff resided in New York, the incident giving rise to the litigation occurred in New York, and the facility where the alleged incident occurred and where future injuries could occur was located in New York).

### 3.    New York Public Policy Favors Litigation of this Case in New York

When considering "the local interest in deciding local controversies at home," Jumara, 55 F.3d at 879-80, New York State's public policy preferences should be given "substantial weight." See Cadapult Graphic Systems, Inc. v. Tektronix, Inc., 98 F.Supp.2d 560, 565 (D. N.J. 2000) (noting that a proposed forum's public policy deserved "substantial weight") (citing Jumara, 55 F.3d at 877).

The State of New York has determined that if a school district board or related entity is sued, it should be sued in the County in which the board is located. See N.Y. C.P.L.R. § 504 (McKinneys' 1966) (stating that the place of trial of all actions against "school districts and district corporations or any of their officers, boards or departments" shall be in the County in which they are located). Therefore, the express public policy of the State of New York is that New York school boards and related entities should be sued in the Counties within which they are located. See id.

New York Education Law § 2590 d(2)(a) requires "that there shall be a parents' association or a parent teachers' association in each school under its jurisdiction. . . ." N.Y. Educ. Law § 2590-d(2)(a) (McKinney's 2003). Additionally, the Chancellor of the New York City Department of Education directly regulates parent teacher associations. See N.Y.C. Dep't. of Ed. Chancellor Regulation A-660. As an entity mandated by state law, and directly regulated by the Department of Education, the PTA is a "board" within the meaning of CPLR § 504. See Weingarten v. Board of Educ. of City School Dist. of City of New York, 3 Misc.3d 418, 427, 776 N.Y.S.2d 701, 708 (N.Y.Sup. 2004) (holding that CPLR § 504(2) was meant to broadly encompass venues in every "county where a school district or district corporation is transacting its business and has a meaningful presence"). Thus, because the PTA should be construed as a school district board under New York law for purposes of venue considerations, New York public policy favors transferring this case to New York.

For the above reasons, practical considerations and local interests favor venue of this litigation in the Southern District of New York. As such, this Court should grant the PTA's motion to transfer venue.

## CONCLUSION

For the foregoing reasons, the interests of justice favor transferring this action to the United States District Court for the Southern District of New York, and the PTA respectfully requests that this Court grant its motion requesting same.

Respectfully submitted,

By: _____

Yuri J. Brunetti
Landman Corsi Ballaine & Ford P.C.
Attorneys for Defendant
PTA of Public School 41 ("PTA")

DATED: August 12, 2009

467801.1 DOCSNJ                          20

# EXHIBIT A

# Welcome to De Lage Landen

De Lage Landen is a global provider of leasing, business and consumer finance solutions, including vendor finance and factoring. Our asset-based financing programs help our customers grow market share, enhance profitability and achieve strategic goals.

We are a fully-owned subsidiary of the Rabobank Group, the world's most creditworthy privately held bank. With a triple-A rating from Moody's and Standard & Poor's, the Rabobank provides a secure, stable foundation for our activities.

Our global reach and broad scope also offer exciting career opportunities for enthusiastic, talented people looking for an international career. Some 45 nationalities are represented within De Lage Landen. Many of our employees enjoy the chance to gain professional experience outside their home country. And we support our people in reaching their full potential through career development programs. Our International Management Trainee program enables 'best-in-class' graduates to make a flying start in a high profile career.

Copyright © 2004 - 2009 De Lage Landen. All rights reserved.

# Company


Welcome to De Lage Landen

De Lage Landen is a global provider of leasing, business and consumer finance solutions, including vendor finance and factoring. Our asset-based financing programs help our customers grow market share... 


Our company

Founded in 1969 as a Netherlands-based leasing company, De Lage Landen has become a global provider of leasing, business and consumer finance solutions, including vendor finance and factoring. 


**Rabobank**
Our parent

The Rabobank Group is a full-range financial services provider founded on cooperative principles and a global leader in sustainability-oriented banking. 


Our history

De Lage Landen, a fully owned subsidiary of the Rabobank Group, was founded in Eindhoven, Netherlands in 1969 in response to a growing need among larger agricultural operations for more sophisticated and far reaching financial services. 

Copyright © 2004 - 2009 De Lage Landen. All rights reserved.



## Latest News

## Jobs

De Lage Landen Financial Services and Tech Data Launch new Lease Line Program

*August 07, 2009* – De Lage Landen Financial Services (De Lage Landen), a global provider of high-quality asset-based financing products to manufacturers and distributors of capital goods, announced today that, together with Tech Data Corporation 》

De Lage Landen signs joint venture agreement with Truckland

*July 09, 2009* – On June 30, a joint venture was signed between De Lage Landen International B.V. and Truckland Group, which will operate under the name of Truckland Lease. 》

# Welcome to De Lage Landen

De Lage Landen is a global provider of leasing, business and consumer finance solutions, including vendor finance and factoring. Our asset-based financing programs help our customers grow market share... 》





Vendor Finance

Vendor Finance is our core competency. We leverage our strengths to help you drive sales and profits through lease finance programs tailored to your needs and those of your customers. 》



Consumer credit facilities

Customers in the Netherlands can access our online consumer credit facilities, as well as special products for public sector employees. 》

Quick links

- Vendor Finance
- 2007 Year in review
- 2008 Year in Review

Copyright © 2004 – 2009 De Lage Landen. All rights reserved.

# EXHIBIT B



| HOME | PRODUCTS | SERVICE | FINANCING | ABOUT US | CONTACT US |

## ABOUT US

**Elite Technology Inc** is head quartered in Manhattan with sales and service locations in Manhattan, Westchester, Nassau County and Suffolk County. After more than a decade of assisting New York & New Jersey businesses with their need for copiers, printers, duplicators, fax machines, shredders and other document management technologies, Elite still stands by its initial commitment - the value of service over sales and the idea of creating relationships over generating profit.

We introduce and intertwine the latest office technology for copying, printing and scanning to your business organization and also service the copier equipment, tweak it to your specifications and upgrade it as required. We provide solutions from the industry market leaders like **SAVIN, RICOH,** and each product has the backing of trained, professional and courteous on-site and off-site technical support team.

Today, **Elite is a AAA-rated company** by independent financial analysts and our method of clean, transparent and open transactions has earned us the "Elite" status from our banking and finance partners -Bank of America, CIT, HHC, Marlin and Wells Fargo who have underwritten more than 100 million dollars worth of equipment.



### ⮞ PRODUCTS AND SOLUTIONS FROM RICOH, SAVIN

- Digital Color Copier Systems
- Digital B&W Copier Systems
- Laser facsimile Systems.
- Scanners
- Document Storage and Retrieval Systems
- Color Printers and B&W Printers
- Digital Duplicators
- Engineering Wide Format Copier and Plotter Systems
- Customized software creation.
- Graphic-intensive Color Copier-Printer Systems
- Shredders

Besides providing new products, we can service any brand of copier, printer or facsimile system. Look at our Service page for more details.

**CONTACT ELITE**