IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------X

DE LAGE LANDEN FINANCIAL
SERVICES, INC.
1111 Old Eagle School Road
Wayne, PA 19087

                          Plaintiff,

                 -v-.

ELITE TECHNOLOGY (NY), INC.
1001 6th Avenue
New York, N.Y. 10018

                 and

PTA OF PUBLIC SCHOOL 41,
MANHATTAN, NY
116 West 11th Street
New York, N.Y. 10011

                    Defendants.

-------------------------------------------------------------X

**Civil Action No: 09-1538 (TJS)**

## DECLARATION OF SUSAN YACCARINO
## IN SUPPORT OF MOTION TO TRANSFER VENUE

**SUSAN YACCARINO**, being of full age, hereby declares under penalty of perjury:

1.     I am a former member of the Board of Directors of the Public School 41 Parent Teacher Association ("Public School 41 PTA"), and the parent of a child who currently attends Public School 41. We live in the Greenwich Village Neighborhood of New York City.

2.     This Declaration is submitted in support of Public School 41 PTA's Motion to Transfer Venue from the Eastern District of Pennsylvania to the Southern District of New York.

3.     For the 2006-2007 school year, I volunteered as the Assistant Treasurer to the Public School 41 PTA. My responsibilities included attending Board meetings and Association meetings, planning and assisting with fundraisers, paying bills and making deposits, and

1

assisting the then-Treasurer, Nancy Caccappolo, with her responsibilities, as well as assisting then-co-President Mindy Garelick.

4.    For the 2007-2008 school year, I volunteered to be Public School 41 PTA's Treasurer.  Because there was no Assistant Treasurer that year, in addition to the responsibilities I had as Assistant Treasurer, I was responsible for preparing and managing the budget, as well as overseeing the organization and budgets for the various fundraising activities which occurred throughout the year.  I also prepared and filed financial reports with Public School 41 and the New York Department of Education.

5.    As Assistant Treasurer and Treasurer, I did not get paid.  In fact, none of the Board members get paid for their work.

6.    While I am no longer a member of the Board of the Public School 41 PTA, I am part of the Association, along with every teacher and parent of a child who attends Public School 41.

7.    I was involved in Public School 41 PTA's investigation of the events giving rise to De Lage Landen's Complaint and the PTA's cross-claims against Elite Technology ("Elite") and I have spoken with numerous of the PTA's witnesses regarding the events leading up to the current lawsuit, including I have also spoken with most of Public School 41 PTA's material witnesses, including: Vicki Sando, a past co-President (2007-2008), Kellie Anderson-Picallo, a past co-President (2007-2008), Mindy Garelick, a past co-President (2006-2007), Nancy Caccappolo, a past Treasurer (2006-2007), and Laura Williams, a past and current co-President (2008-2010).

8.    Each of the above former and current Board members, all of whom reside in New York City, was involved with matters related to issues raised in De Lage Landen's Complaint and in our Amended Answer with Cross-Claims, and their testimony will be required in support

2

of the PTA's defenses and cross-claims in this case.

9.      Before I was on the Board, Public School 41 PTA began using a broker, Dawn Cangro, to lease copy machines.  When I dealt with Ms. Cangro, she was working for Elite, but Ms. Cangro previously worked for Ricoh Business Services when she first started brokering copy machine leases for the PTA.

10.     In 2003, Jill Tapia, who was co-President of Public School 41 PTA at that time, leased three copiers from Ricoh Business Services.

11.     In 2005, Public School 41 PTA entered into a buyout agreement with Elite whereby Elite agreed to pay the remaining balance due on the lease for the three Ricoh copiers via annual lump sum payments in 2005, 2006 and 2007.

12.     In 2005, in conjunction with the buyout agreement, Public School 41 PTA leased a Savin 4090 copier.  The lease was brokered by Elite's employee Ms. Cangro, and Elite made its first payment to the PTA pursuant to the buyout agreement.

13.     In 2006, in conjunction with the buyout agreement, Public School 41 PTA leased a Savin 4051 and a Savin 4075 copier.  The lease was brokered by Elite's employee Ms. Cangro, and Elite made the second payment to the PTA pursuant to the buyout agreement.

14.     In 2007, while I was Treasurer, Elite refused to make the final payment due under the buyout agreement.

15.     In addition, Dawn Cangro and Elite advised the Board that it had to sign a new service agreement with Elite that would have significantly increased the PTA's financial obligations with  respect to the copy machines it was leasing.  At the time, we believed the three Savin copy machines in our possession were leased from Key Equipment Finance and De Lage Landen through deals that were brokered by Elite.  Together with the then co-Presidents Vicki Sando and Kelly Anderson-Picallo, we looked into the history of the machines we were leasing

3

and the invoices we were paying, and questioned why we were being asked to sign a new service agreement and to pay more money.

16.     Public School 41 PTA's investigation, which included extensive communications with representatives from Elite, Key Equipment and De Lage Landen, as well as meetings with Elite employees, led us to believe that we may have been the victims of a scheme in which we were misled into overpaying for copy machines. For example, we discovered that we were paying invoices from two separate companies, Key Equipment and De Lage Landen, for a Savin 4051 copier. The invoices from both companies had the same exact serial number for the Savin 4051 copier.

17.     If I am called to testify, I would explain our investigation, the discussions we had with representatives from Elite and Key Equipment, and the documents provided to us by both companies. I would also be able to explain my understanding of the history of the copy machine leases, payments made to Key Equipment and De Lage Landen, what we thought those payments were for, what machines we actually had and were using, and other facts which I understand may be relevant to this case.

18.     Although I am willing to testify, traveling to Philadelphia would be very difficult for me and my family. I am a stay-at-home mom and my children are 8 and 11 years old. We do not have a nanny or any other person to care for our children. I make them breakfast and lunch and I pick them up from school at around 3:00 p.m. everyday. I also prepare dinner for the family in the evenings. During the day, while my children are in school, I take care of the house, prepare meals, and run errands.

19.     Traveling to Philadelphia for this case would cause a major disruption to our family's routine and place a financial burden on my family. I would have to hire someone to look after my children each time I had to travel to Philadelphia and would incur out-of-pocket

expenses for such trips, such as meals. In addition to looking after my children at home, anyone I hired would have to prepare meals and pick them up after school. It would be even more difficult for me to travel to Philadelphia if my children were on a school break because they would then be home all of the time and someone would need to take care of them all day. Additionally, my husband has periods of time when he travels extensively for his work, which would further complicate the situation.

20.    I also do not have a car and do not drive. In case of an emergency, such as an illness or accident, it would be much more difficult to quickly get home to my family.

21.    It would place a financial burden on Public School 41 PTA to pay for travel and lodging costs incurred for PTA witnesses and representatives to attend court appearances and trial in Philadelphia. Any expenses incurred in this litigation for travel and/or lodging would diminish the amount of money available for the PTA's programs and deprive the children of Public School 41 of the full benefit of the PTA's fundraising efforts.

22.    I respectfully ask the Court to move this case to New York where the school is located, the PTA's and Elite's documents are located, the copiers at issue are located, and all of the PTA's material witnesses are located.

23.    I would expect that De Lage Landen, as a large corporation with paid employees, would be in a better position to bear the costs necessary to come to New York City, rather than requiring parents who volunteer for a non-profit Parent Teacher Association to travel to Philadelphia.

24.    I respectfully ask the Court to transfer this case from Philadelphia to New York.

I hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that I have reviewed this Declaration, and that the facts contained herein are true and correct to the best of

5

my information and belief. I understand that the statements made herein are made subject to the penalties relating to unsworn falsification to authorities.

SUSAN YACCARINO

Dated: August 7, 2009

483196.1 DocsNY