IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DE LAGE LANDEN FINANCIAL SERVICES, INC.** | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-1538 |
| | : | |
| **ELITE TECHNOLOGY (NY), INC.**, *et al* | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                             September 30, 2009

      Defendant PTA of Public School 41 ("PTA"), a non-profit association which supports Public School 41 in New York City, has moved to transfer this breach of contract and unjust enrichment case brought by the plaintiff, De Lage Landen Financial Services, Inc. ("DLL"), a Michigan corporation with a place of business in Wayne, Pennsylvania, to the Federal District Court for the Southern District of New York. PTA asserts that the Southern District of New York is the more appropriate forum because both defendants reside in New York, certain PTA cross-claims are governed by New York law, the contracts at issue were negotiated in New York, and the majority of witnesses and documents are in New York. In addition, it contends that the significant financial burden of litigating this case in Philadelphia supports transfer. In opposition, DLL argues that this matter should remain in the district which it has chosen, and where it conducts business and significant events giving rise to the litigation occurred. DLL also invokes the forum selection clauses of the contracts that provide that DLL may select this district as the appropriate forum.

      After weighing all relevant factors and giving consideration to the plaintiff's

preference and the forum selection provisions, we conclude the balance tips in favor of transferring this action to the Southern District of New York. Therefore, PTA's motion to transfer will be granted.

## Background Facts

As alleged in the complaint, DLL entered into two lease agreements with the PTA in which it agreed to provide copy machines to PTA (respectively, the "Savin 4051/4075 Lease," and the "Savin 4090 Lease")[1]. DLL, through an assignment, acquired a third lease originally entered into between PTA and Ricoh Business Systems, Inc (the "Ricoh Lease").[2] PTA has discontinued making payments under all three leases.[3]

On April 9, 2009, DLL initiated this action against PTA and Elite Technology (NY) Inc. ("Elite") for breach of contract and unjust enrichment.[4] In its Amended Answer, PTA admits it discontinued making lease payments to DLL, but not until the validity of those agreements came into question.[5] Specifically, PTA contends that certain agreements relating to the leased copiers were forged.

PTA is a non-profit association of parents, teachers and staff. Its mission is to support and provide resources for the benefit of children attending Public School 41 in New York City. It is funded solely through donations and fund raising, and uses its resources to supplement student enrichment programs and provide administrative support to the

---

[1] Compl. ¶¶ 10, 25.

[2] *Id.* ¶¶ 27, 28.

[3] *Id.* ¶¶ 17, 35.

[4] In the Complaint, DLL filed additional claims against Elite for indemnification and tortious interference.

[5] Def's Amend Answr. ¶¶ 17, 35.

school. PTA negotiated and signed the lease agreements in New York. The copy machines at issue are located in New York.

## Summary of Law

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer. *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying district. *Jumara*, 55 F.3d at 879-80. Depending on the nature and facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the court has broad

discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite this wide latitude, a transfer motion is not to be granted without a careful weighing of factors favoring and disfavoring transfer. *See Shutte*, 431 F.2d at 24-25. Indeed, because the defendant bears the burden of demonstrating that the balance of convenience and the interest of justice clearly favor transfer, a court's analysis should begin by favoring the plaintiffs' selection of venue. *Jumara*, 55 F.3d at 879-80.

**Analysis**

There is no question that this action could have been brought in the Southern District of New York. It is a district where PTA and Elite are both residents, and where PTA signed the leases in question. *See* 28 U.S.C. § 1391(a).

The inquiry turns to weighing the private and public interest factors to determine which forum is more convenient for the parties and the witnesses, and will serve the interest of justice.

*(1) The plaintiff's choice of forum and the forum selection clauses*

    a.    <u>Choice of Forum</u>

The plaintiff's choice of forum typically receives "paramount consideration." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). However, the plaintiff's choice is given less deference when none of the operative facts underlying the claim occurred there. *See McMillan v. Weeks Marine, Inc.*, No. 02-CV-6741, 2002 WL 32107617, at *1 (E.D. Pa. Dec. 2, 2002); *Lindley v. Caterpillar, Inc.*, 93 F. Supp.2d 615, 617 (E.D. Pa 2000).

The majority of the operative facts in this case occurred in New York. All three of the leases were negotiated in New York. The buyout agreement between PTA and Elite ("Buyout Agreement"), which PTA considers crucial to its defense against DLL's claims,

was negotiated and executed in New York. Additionally, although not referenced in the parties' briefs, the alleged breach of contract occurred in New York where PTA failed to make lease payments and not in Pennsylvania where DLL did not receive payment. *De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.*, 2000 WL 1593978, at *2 n.4 (E.D. Pa. Oct. 25, 2002) (citing *Cottman Transmission Systems Inc. v. Martinio*, 36 F.3d 291, 295 (3d Cir. 1994)).

DLL contends that several important facts giving rise to this matter occurred in Pennsylvania, such as the receipt of lease payments and PTA's credit application for the 4090 lease. Additionally, DLL asserts that funding and execution of the leases occurred in Pennsylvania. However, few of these facts are significant to its claims against PTA.

The significance of DLL's receipt of lease payments is minimal. Receipt of contractual payments is largely a ministerial function. Also, as referenced earlier, it is the failure of PTA to remit payments that gives rise to DLL's breach of contract claim. *See De Lage* at *2 n.4. Consequently, DLL's receipt of lease payments is less significant than PTA's failure to make such payments.

DLL's funding of the leases is not entitled to significant weight. While DLL originated funding of the copy machines from Pennsylvania, such payments were made to Elite in New York.[6] Finally, although it is true that DLL fully executed the leases in Pennsylvania, that fact alone is insufficient to tip the balance in DLL's favor. Accordingly, few significant facts occurred in Pennsylvania.

Considering that the majority of operative facts occurred in New York, DLL's choice of forum need not be given "paramount consideration."

---

[6] Majer Dec., ¶ 6.

      b.      Forum Selection Clauses

Forum selection clauses are entitled to substantial consideration in determining whether to transfer a case. *Jumara,* 55 F.3d at 880. Although the presence of a forum selection clause is afforded significant weight, it is not dispositive. *Id.* A forum selection clause is just one factor in balancing the convenience of the parties. *Id.* Nevertheless, the party seeking to avoid the forum selection clause has the burden to show why it should not be bound by their choice. *Id.*

Forum selection clauses are either mandatory or permissive. *Campanini v. Studsvik, Inc.*, 2009 U.S. Dist. LEXIS 28908, at *9 (E.D. Pa. Apr. 6, 2009) (Schiller, J.); *See also, Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 758 n.7 (3d Cir. 1973) (distinguishing between forum selection clauses that mandate "exclusive jurisdiction" and those that "merely consent" to jurisdiction). A mandatory forum selection clause clearly dictates that venue is proper only in the agreed upon forum. A permissive one does not limit the fora, but merely authorizes venue in a particular forum. *Campanini* at *9. Thus, the controlling factor is whether the parties intended to litigate actions in one court to the exclusion of all others. *SBKC Service Corporation v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 582 (10th Cir. 1997).

Permissive forum selection clauses are given less weight than mandatory ones because they do not exclusively limit the appropriate venue for litigation. *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 245-46 (E.D. Pa. 2007). The absence of a mandated forum in an agreement suggests that other factors may make another forum more convenient or appropriate.

Two of the three leases here contain a forum selection clause.[7]  Specifically, the Savin 4051/4075 Lease and the Savin 4090 Lease contain the following provision:

> 21.  CHOICE OF LAW:     This Lease shall be deemed fully executed and performed in the Commonwealth of Pennsylvania and shall be governed and construed in accordance with the laws thereof.  YOU consent to and agree that personal jurisdiction over YOU and subject matter jurisdiction over the Equipment may at OUR option be with the Courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania with respect to any provision of this Lease. YOU also agreed to waive YOUR right to a trial by jury.[8]

This language is permissive.  It allows, but does not require, venue in the courts of the Eastern District of Pennsylvania.  The clause uses the permissive terms "may" and "option."  The word "may" is "universally recognized as connoting permissiveness.  It is not a word of exclusion." *SBKC Service Corporation* at 582.  Although the forum selection clause gives DLL the option to choose personal and subject matter jurisdiction, it does not mandate that "venue is proper *only* in the selected forum." *Campanini* at *9*. (emphasis added).

Not only are the forum selection clauses in the two Savin leases permissive, the Ricoh lease contains no such clause, mandatory or permissive.  In addition, PTA has filed five cross-claims against Elite in connection with the lease agreements.  The cross-claims arise under New York law.  In light of the absence of a forum selection clause in the Ricoh Lease, PTA's cross-claims against Elite which is not a party to the Savin leases, and the permissive nature of the forum selection clauses, the forum selection provisions in two of the leases will not be given paramount consideration in the transfer analysis.

---

[7] The Ricoh Lease does not contain a forum selection clause.

[8] Compl. Exs. 2, 9.

Nevertheless, the clauses weigh in favor of DLL.

### (2) The defendant's preferred forum

PTA prefers to litigate this case in the Southern District of New York. The leased copiers are physically located in New York. PTA contends that all of its probable fact witnesses reside or work in New York. Moreover, PTA is concerned with the costs of transporting witnesses to Philadelphia, particularly in view of its non-profit status and institutional mission. Therefore, PTA's preferred forum weighs in its favor.

### (3) The place where the claim arose

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns. Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

The breach of contract claims arose in New York. It is PTA's failure to make lease payments which occurred in New York, not DLL's non-receipt of payment in Pennsylvania, which constitutes the breach. *De Lage Landen* at *2 n.4.

### (4) The relative ease of access to the sources of proof

PTA will have greater difficulty than DLL in accessing sources of proof in Pennsylvania. DLL asserts that transferring this action would require it to transport records and witnesses to New York. Conversely, PTA contends that the majority of witnesses and evidence are in New York, and transporting them to Pennsylvania would be burdensome.

Although both parties will likely produce records in discovery, the potential burden

on PTA to transport the copy machines to Pennsylvania is not insignificant.[9] In addition, traveling to Philadelphia would impose unique hardships for PTA's potential witnesses. All of PTA's witnesses reside in New York City and are unpaid volunteers. They would face inconvenience and personal expense in traveling to Philadelphia. In contrast, while DLL's witnesses may suffer similar inconvenience by transfer to New York, they are employees of DLL.

Much of the documentary proof necessary to the litigation is in this district. However, DLL's burden of transporting documents to New York is substantially less than the burden of unpaid witnesses traveling from New York to Philadelphia. On balance, the sources of proof factor weighs in favor of transfer.

*(5) The convenience of the parties as demonstrated by relative financial status and physical location*

The Southern District of New York is more convenient in terms of financial burden and physical location for PTA. Pennsylvania is a more convenient location for DLL's witnesses, but DLL's financial status allows it to absorb the cost of traveling more easily than PTA. Therefore, the Southern District of New York is more convenient in terms of the relative financial status of the parties.

PTA is a non-profit organization with the sole purpose of providing support to Public School 41 in New York City. It relies exclusively on donations and fund raising to finance its support of child enrichment programs. Its board members are unpaid volunteers.

---

[9] *See* Yaccarino Dec., ¶ 16. While it is not yet clear whether PTA will need to produce the copy machines, it is possible. Susan Yaccarino's declaration notes that PTA paid two invoices on one printer and that each of the billing invoices used the same printer serial number. Since there is a question as to whether PTA paid duplicate charges on the same copier, there is a realistic possibility that they may need to produce such copier.

Litigating this matter in Philadelphia would impose a serious financial burden on PTA, and reduce its ability to support Public School 41.[10]  If this case remains in Pennsylvania, transportation costs incurred for multiple witnesses will burden PTA.  In contrast, DLL is an international corporation that instituted this litigation.  If it prevails, DLL may be entitled to its costs as provided in the lease agreements.[11]  Burdens imposed on DLL to litigate this matter in New York will be less onerous than those likely to be incurred by PTA if required to travel to Philadelphia.

PTA witnesses will incur personal inconvenience and out-of-pocket expenses in connection with attending trial in Philadelphia.  Traveling to Philadelphia may require them to miss work, incur child care obligations, and pay for meals.  Although DLL's witnesses may be similarly inconvenienced if this case is transferred to New York, those witnesses are employees of DLL and will be paid and reimbursed.  In consideration of these factors, transfer favors PTA.

*(6) The availability of compulsory process for the attendance of witnesses*

It does not appear that the parties anticipate difficulties in compelling the attendance of witnesses.  Therefore, availability of compulsory process is a neutral factor in balancing the conveniences of the parties.

*(7) The convenience of the witnesses*

PTA has demonstrated that its volunteer board members will be severely inconvenienced if compelled to testify in Pennsylvania.  Nevertheless, PTA has failed to

---

[10] *See* Brachman Dec., ¶ 12, Yaccarino Dec. ¶ 21.

[11] *See* Compl. Exs. 2, 9. The Savin 4051/4075 Lease and the Savin 4090 Lease each contain the following provision: "YOU are also required to pay (i) all expenses incurred by US in connection with the enforcement of any remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Equipment, and (ii) reasonable attorneys' fees.

show that any of its witnesses would actually be unavailable for trial in Philadelphia.

Courts are only permitted to consider the convenience of the witnesses to the extent the witnesses may actually be unavailable for trial in a particular venue. *Jumara*, 55 F.3d at 879; *Brenner v. Consolidated Rail Corporation,* 2009 U.S. Dist. LEXIS 77014 at *7 (E.D. Pa. Aug. 26, 2009). Therefore, although PTA's witnesses will be inconvenienced if this case is litigated in Pennsylvania, the failure to demonstrate any issues of actual availability favors neither side.

*(8) The practical problems that make trial of a case expensive and inefficient*

PTA contends that there are practical considerations that would make prosecution of this case in Pennsylvania expensive and inefficient. Significantly, PTA and Elite are currently engaged in litigation in the State of New York arising from the same activities involved in this action. PTA has retained counsel in both New York and Pennsylvania to adjudicate these similar actions, causing PTA to incur expenses which will be avoided if this case is transferred. In light of the ongoing state court litigation, efficiency considerations favor transferring this case to the Southern District of New York.

*(9) The "public interest" factors*

PTA contends that New York has a strong public interest in adjudicating this case because many of the operative facts occurred there. Additionally, PTA asserts that New York law governs its cross-claims against Elite and the State of New York has a strong public policy interest in actions that affect public schools. On the other hand, DLL notes that Pennsylvania has a strong interest in vindicating the contractual rights of its businesses. Likewise, although PTA's counter-claims may arise under New York law, DLL's claims are subject to Pennsylvania law.

Both New York and Pennsylvania have an interest in this litigation. With respect to PTA's counter-claims against Elite, the State of New York has a significant interest involving the alleged wrongful acts of its residents. This is particularly evident considering that Elite is currently the subject of a criminal investigation by the New York County District Attorney's Office. However, Pennsylvania has a legitimate interest in ensuring that the contract rights of its business are justly enforced. Therefore, in balancing the competing interests, the public interest factor is neutral.

## Conclusion

After balancing all relevant competing interests, including the plaintiff's choice of forum and the permissive forum selection clause, the private and public interests tip in favor of transferring this case to the Southern District of New York. Accordingly, in the interest of justice, the motion to transfer venue will be granted and this case will be transferred to the Southern District of New York.